# Staunton.

## SCOTT AND WIFE v. ROWLAND AND ALS.

### OCTOBER 8th, 1886.

1. WITNESSES—*Competency—Husband and wife.*—Where land is deeded to husband and wife and the survivor, neither is competent to testify in a suit wherein the validity of the deed is in controversy.

2. EQUITABLE JURISDICTION AND RELIEF—*Chancery practice—Case at bar.*—In 1878, in suit under Code 1873, ch. 148, sec. 1, against S., a non-resident, R. got judgment and an order to sell the attached land. S. and wife got sale enjoined, their bill stating that in 1872, S., then not in debt, bought at judicial sale the land for $4,300, paid $1,500, and becoming unable in 1873 to pay balance, his wife paid it with her own funds on agreement the purchase should enure *pro tanto* for her separate benefit; but that commissioner had conveyed it to him and her and the survivor. She asked that her part be laid off to her. R. answered, denying that she paid anything, and prayed that his answer be treated as a cross-bill, the deed be set aside as null, and the land sold to pay his judgment. The circuit court excluded the depositions of S. and wife, and being of opinion that they had failed to prove their averments, and that the land was liable to the judgment, decreed sale. At same term the court permitted S. and wife to file demurrer and answer to R.'s answer, taken as a cross-bill, the same failing to allege any grounds why the deed should be annulled. In 1879 commissioners reported sale. S. and wife excepted to its confirmation, and filed bill of review of the former decree. The circuit court overruled the demurrer and the exception, confirmed the sale, and ordered commissioners to pay the net proceeds to R. On appeal here—

HELD:

    1. R.'s answer was improperly treated as a cross-bill, as proper relief was attainable on the bill and answer.

    2. Demurrer to cross-bill should have been sustained, as it contained no averment that the deed was voluntary or fraudulent.

3. Burden of proof was on Mrs. S. that she paid more than half of the purchase money, and she failed to prove it.
4. But the deed itself established her right to half the land, and it rested on R. to aver and prove that it was voluntary, or fraudulent, and void. This he did not.
5. The decree of sale should have been reversed on the bill of review.
6. S.'s moiety of the land should be subjected to R.'s judgment. The injunction should be perpetuated as to the moiety of his wife.

Argued at Richmond.    Decided at Staunton.

Appeal from decree of circuit court of King George county, rendered November 19, 1879, in the chancery cause of Leonidas Scott and Martha A., his wife, plaintiffs, against J. H. Rowland, doing business in the name of J. H. Rowland & Co., George D. Johnson and George W. Griggsby, sheriff of said county, defendants. The decree being adverse to Scott and wife, they obtained an appeal and writ of *supersedeas* from one of the judges of this court.

Opinion states the case.

*Joseph Christian, J. M. Matthews,* and *R. B. Lewis,* for the appellants.

*J. J. Mason* and *John G. Mason,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The facts essential to a proper understanding of the case are these: On the 8th of March, 1876, J. H. Rowland, by the firm name and style of J. H. Rowland & Co., obtained a judgment in the Supreme Court of the District of Columbia against the said George D. Johnson and the appellant, Leonidas Scott, by the firm name of Scott & Johnson, for $2,655.17, with inter-

est on $606.25, part thereof, from October 28, 1875, and on $600, another part thereof, from October 29, 1875, and on $838.92, another part thereof, from November 12, 1875, and on $610, the residue, from November 29, 1875; and costs, $26.80.

Subsequently, to wit: on the 6th of September, 1877, the plaintiff in said foreign judgment instituted an action at law thereon in the circuit court of King George county, in Virginia, against said Scott and Johnson; and on the same day an attachment was sued out by the plaintiffs in said action against the estate of said defendants (both of whom were non-residents of the State of Virginia), under section 1, chapter 148, Code 1873, upon the affidavit of the plaintiffs, made by their agent, as required by said first section of chapter 148.

The attachment went into the hands of the sheriff of said county, and was by him, on the 7th day of September, 1877, levied on certain personal and real property, as the property of Leonidas Scott; the real estate thus levied on being the subject of controversy in this suit. The return of the sheriff describes the real estate levied on as the tract of land purchased by Leonidas Scott from Messrs. Lewis and Mason, commissioners in the chancery suit, in the circuit court of King George county, by the style of Quesenberry's Ex'or against Grymes' Adm'x, and as part of that tract of land of which T. J. J. Grymes died seized and possessed, known as "Somerset," containing — acres located immediately on the Potomac river, in said county of King George.

At the April term of said court, 1878, the said plaintiffs obtained a judgment against said Scott and Johnson for the amount of their said foreign judgment, with interest as aforesaid and costs, and the costs of suit, and an order for the sale of said real estate.

On the 20th of April, 1878, the appellants, Scott and wife, and said Cook, trustee, presented their bill of injunction to the judge of the circuit court of King George county, setting forth the facts above stated, and also that long prior to the rendition of said foreign judgment, to wit: On the 3d day of January, 1872, the said Leonidas Scott, who then had no knowledge whatever of owing or being indebted to said J. H. Rowland, or to any one else, to any great extent, purchased of said Lewis and Mason, commissioners as aforesaid, the said farm, known as "Somerset," for about $4,300, in round numbers, $1,500 of which was to be paid in cash, and the balance in one, two, and three years; that after said Scott had made the cash payment, he found himself unable to meet the deferred payments as they became due "on account of his being crippled in his business and his means by the financial crash of 1873." That in this emergency he had recourse to his wife, the said Martha Scott, who had a separate property in the District of Columbia, derived in part from her deceased mother, and in part from the separate business which she did in the city of Washington, and from which she had accumulated considerable money; that he informed her of his embarrassed situation and that he would have to lose what he had paid on this farm unless she assisted him in his emergency; that after due consideration she agreed to pay, out of her separate estate, the balance due on the purchase of said farm, which amounted, inclusive of accrued interest, to about $3,000, the exact amount not having been accurately kept because it was the agreement and intention of both Scott and his wife that this should be a permanent investment of her separate money for her benefit; that the money so agreed to be invested by her was so paid by her upon the express condition that the purchase should enure to her benefit, and the money so invested should continue to be her separate estate, and in no wise become a part of the estate

of her husband; that to these terms and conditions, said Leon-
idas Scott acceded and acted as her agent in making the
investment of her money in said "Somerset" farm; that in
order to perfect and carry out this agreement and to protect
the investment of said Martha Scott in said farm, after the
purchase money had all been paid, and a deed was about to
be made, the said Leonidas Scott, in pursuance of the said
agreement, directed Special Commissioner J. J. Mason to convey
said land to said J. H. Cook, in trust for the sole use and ben-
efit of said Leonidas Scott, and Martha, his wife, and the sur-
vivor of them, and the heirs and assigns of such survivor,
which was accordingly done, and with the bill filed a copy of
the deed as Exhibit "D"; and that the said Martha A. Scott
having paid much the larger part of the purchase money for
said farm, she claimed the right to have her interest therein
ascertained and relieved from the order of sale of said circuit
court of King George county, and to have the same set aside
to her, and for general relief.

On the 20th of April, 1878, an injunction was awarded by
the judge of the circuit court of King George county, accord-
ing to the prayer of the bill, to restrain the sheriff of said
county from proceeding to sell the land under the order in the
suit and attachment in the bill mentioned.

On the first day of October, 1878, an order was entered in
the cause appointing said George W. Griggsby, sheriff, receiver
to take charge of said land, collect the rents thereon due, and
to become due, and to rent the same out and collect the rents
until the property was sold, or until the further order of the
court.  On the same day of the order last referred to, said J.
H. Rowland, by leave of court, filed his answer to the com-
plainants' bill, stating that of his own knowledge he knew
nothing of the truth or falsity of the allegations of the bill,
"but from information derived from others" he believed them

to be false, and so believing denied them, and called for proof of same; praying that his answer to this extent be taken and considered as in the nature of a cross-bill; and further praying that the deed in the bill mentioned—to wit, the deed from Mason, commissioner, to said Leonidas Scott and Martha A. Scott, his wife, for said "Somerset" farm be set aside as null and void, and that said farm be sold, subject to the complainant, Martha A. Scott's, contingent right of dower, and that the proceeds be applied *pro tanto* to the liquidation of said Rowland's debt.

In support of the allegations of their bill, the complainants took the depositions of said John H. Cook, and of said Leonidas Scott and Martha A. Scott, the last two being excepted to as incompetent to testify, they being husband and wife. No depositions were taken by the said defendant, J. H. Rowland & Co.

In this state of the case the cause was heard at the April term, 1879, when "the court, being of opinion that the plaintiffs had failed to establish the allegations of their bill, and that the real estate in the bill named (the Somerset farm) was liable to be subjected to the payment of the debt of the defendants," decreed that unless Leonidas Scott, or some one for him, should, within sixty days next thereafter, pay to the said J. H. Rowland & Co., or their attorney, the debt in the bill named, that Charles H. Ashton and Julien J. Mason, commissioners named for the purpose, should proceed to sell the said land at public auction, subject to the contingent right of dower of said Martha A. Scott, on the terms prescribed by the decree, and make report thereof to court; and by said decree the court adjudged that the said plaintiffs pay to the said defendant his costs, &c.

Yet, notwithstanding the decree last above referred to, the circuit court, on a later day during the same term, on the motion of the plaintiffs, granted them leave to file their answer

within ninety days, to the answer of the defendants, taken and considered as a cross-bill in the cause. Accordingly, on the 24th of May, 1879, the said Leonidas Scott and Martha A., his wife, filed their demurrer and answer to said answer of the defendants, taken and considered as a cross-bill; and for cause of demurrer they say that said cross-bill has not sufficient equity alleged in same to sustain the prayer of the respondents, Rowland & Co.: "that the conveyance to John H. Cook, trustee, be set aside as null and void, and that the same be sold subject to the contingent right of dower therein of the complainant, Martha A. Scott," in this, that they do not state in their said answer, taken as a cross-bill, any reasons, grounds or facts, such as would entitle them to a decree for the sale of the interest of said Martha A. Scott in and to said property. In their answer, except what is stated argumentatively to show that the averments in the answer of Rowland & Co. are wholly insufficient to be treated as a cross-bill, the statements are substantially a repetition of those contained in their original bill.

After these proceedings were had in the cause, the depositions of a number of witnesses were taken on behalf of the plaintiffs and filed in the cause; to all of which the counsel for Rowland & Co. excepted, on the general ground that the rights of the parties had been already adjudicated by the decree of April, 1879, and the property ordered to be sold, and that further testimony was inadmissible.

It appears from the decree appealed from, and seems to be conceded in argument, that sometime subsequent to said decree of April, 1879, settling the principles of the cause, said Scott and wife submitted a motion to the court in the nature of a petition to rehear, or bill to review said decree, but the document itself does not appear in the record, though it is referred to in the final decree complained of.

Later, the commissioners appointed by the decree of April, 1879, to make sale of the land, reported that they had sold the same, and that J. H. Rowland became the purchaser at the price of $2,853.37; they recommended that the sale be confirmed.

On the 19th day of November, 1879, the final decree appealed from was rendered. That decree brought the cause on to be heard "on the papers formerly read, the answer of Leonidas Scott and wife to the cross-bill of the defendants in the original suit, the motion of Scott and wife in the nature of a petition for a rehearing, or bill of review, to set aside the decree entered on the first day of April, 1879, adjudicating the rights of the parties and ordering a sale of the land, the demurrer of said Scott and wife to the cross-bill, the depositions of witnesses taken since the decree, and the report of the commissioners of sale, with exhibits," &c. And the decree contains this language: "On consideration whereof, the prayer for the sale of the land in the answer of the defendants to the original bill, and that it might be taken as a cross-bill, having been inserted in the original answer in its present shape by consent and agreement of parties, by counsel, for the purpose of securing a sale by commissioners of the court in this case; and avoiding the possible necessity of a sale under the attachment law, the court being of opinion that the objection, whether it would have been well taken or not, came too late, doth overrule the demurrer. And the court not deeming it necessary to pass upon the questions discussed at the bar, as to the principles governing the admissibility of the evidence taken since the decree of April, 1879, because it is of opinion that the whole evidence in the cause, if it were now to be considered as if for the first time submitted to the court, fails to establish that Martha A. Scott did, out of her separate estate, furnish any part of the purchase money paid by her husband for the farm

called 'Somerset,' under an agreement that she was to be a purchaser *pro tanto*, or for any part thereof, doth overrule said motion to set aside said decree." And the cause then coming on to be further heard "upon the report of the commissioners of sale, to which there is an exception taken by Martha A. Scott for inadequacy of price; on consideration the court overruled the said exception and confirmed the report, and decreed that the said commissioners, out of the cash payment received by them, pay the costs of suit and expenses of sale, and the balance, if any, to the creditors—Rowland & Co.—and that they proceed to collect the deferred payments as they become due, or when they shall be tendered, if sooner, by the purchaser, and apply the same to the payment of the debt due to said Rowland & Co., and directing, when the purchaser shall have paid the whole of the purchase money, that Julien J. Mason, who was thereby appointed a special commissioner for the purpose, should convey by a good and sufficient deed the said land to the purchaser, or to such person as he might designate, and that said commissioner report, &c.

From this decree an appeal and *supersedeas* was obtained from one of the judges of this court, by the appellants, Leonidas Scott and Martha A. Scott, his wife.

Before proceeding to consider this case on its merits, it is necessary to pass upon the question of the admissibility of the depositions of the appellants, Leonidas Scott and Martha A. Scott, taken on behalf of the latter, they being husband and wife.

The common law rule that husband and wife cannot testify either for or against each other, so far from being changed or altered by our statute removing the disqualification of witnesses on account of interest; is expressly preserved without any change or modification. Code 1873, ch. 172, secs. 21, 22.

Under that rule it is clear that neither of these witnesses are competent to testify in this case. The insistance that Mrs. Scott is competent under the decision of this court in *Frank & Adler* v. *Lilienfeld*, 33 Gratt. 377, is not well founded. In that case the wife deposed neither for nor against the husband, but wholly in her own behalf, in a suit in which the husband, it is true, was a party, but in which the sole object was to reach property conceded to be her *separate estate;* and hence her evidence could not affect him. Here, however, the case is different; the real question here being whether the property claimed by Mrs. Scott, and sought to be subjected to her husband's debt, is or not her separate estate, and if so, to what extent. Here, the property in controversy is held in trust for the sole use and benefit of said Leonidas Scott and Martha A., his wife, and the survivor of them, and the heirs and assigns of such survivor. Upon the face of the deed Scott and wife take not only jointly, but equally. Yet, Mrs. Scott claims that she paid out of her separate estate much the larger part of the purchase money, amounting to some $3,000, and asks that her interest to that extent be set apart to her and protected against her husband's said indebtedness. Obviously, then, whilst she may not be estopped from showing by competent testimony how much of the purchase money was actually paid by her, out of her separate estate, and that to such extent the property is hers and not liable to her husband's debts; yet she cannot testify in support of her claim, because to do so would be to testify against her husband, who, upon the face of the deed, is equal owner with her. It is equally clear that Scott himself cannot testify, for his evidence would be necessarily either for or against the claim of his wife. Without multiplying reasons, it is apparent that both are incompetent under the rule.

We come now to consider the several errors assigned by the appellants, the first of which is, that the circuit court erred in

holding by the decree complained of that the evidence failed to establish that Martha A. Scott did, out of her separate estate, furnish any part of the purchase money paid by her husband for the farm called "Somerset," under an agreement that she was to be a purchaser *pro tanto.*

The court below failed to pass upon the exceptions of the defendant to the depositions of Leonidas Scott and Martha A. Scott, his wife, and in so failing was clearly in error; for these depositions, if admissible, clearly establish that Mrs. Scott owned a very considerable separate estate in the city of Washington, from which she paid over $3,000 towards the purchase of this farm, under an express agreement that it was to be a permanent investment, and remain her separate estate. As we have seen, Scott and wife were neither competent witnesses; and had their depositions been rejected, as they should have been, the court below would then have necessarily held that Mrs. Scott was restricted to what the deed on its face gives her, as without the evidence of these witnesses there is no direct evidence that she became a purchaser to the extent claimed by her.

But the court is nevertheless of opinion that the decree complained of is, in several important particulars, palpably erroneous.

The plaintiffs' bill sets forth in detail how, and the circumstances under which, Mrs. Scott became, with her husband, a joint purchaser of the land in controversy; the extent to which the purchase money was paid by her, out of her separate estate, under the aforesaid agreement with her husband, that it was to be a permanent investment, and remain her separate estate; and the bill contains the express averment that by the advice of her counsel, and in accordance with the directions of her husband, to the end of protecting her said investment, the commissioner, from whom her husband originally purchased

the land, made the conveyance to said Cook, trustee, as aforesaid, and with and as part of this averment the deed itself is exhibited.

The answer of Rowland & Co. is very brief. It is that respondents know nothing of the truth or falsity of the averments in the bill, but from information derived from others they believe them to be false, and so believing, they deny them, and each of them, and call for proof of each and every one of them. And they ask that their answer to this extent be taken and treated as a cross-bill, and the prayer is that the deed in the bill named be, as to their debts, "dissolved and set aside as null and void, and that the land be sold subject to complainant, Martha Scott's contingent right of dower, and the proceeds applied *pro tanto* to the liquidation of respondents' debt."

It seems next to incredible that this answer should have been relied upon to perform the office of a cross-bill: yet it was so taken and treated by the court below. It does not allege that the deed from Mason, commissioner, to Cook, trustee, for the land in question was, as to Mrs. Scott, for a consideration not deemed valuable in law, or that it was made to hinder, delay and defraud either the then existing or subsequent creditors of Leonidas Scott; nor does it allege that said Rowland was a creditor of said Scott at the time the deed was executed. In other words, there is no allegation that there was *mala fides* or fraud in fact in the transaction. It is but the ordinary simple denial, in general terms, of the allegations of the bill.

The principle that fraud must be averred and proved is too well settled to require argument or the citation of authorities. But, though fraud must be averred and shown, "it is not required that the actual or express intent be shown by direct proof; for this would be unattainable in many cases, and if it cannot be given, it may be supplied by just legal implication

from the evidence when the circumstances are such, or such marks or badges of fraud are present, that the vicious intent may and must be inferred." *Johnston* v. *Zane*, 11 Gratt. 552, and authorities cited.

There is not a word in either the pleadings or evidence in this cause that in any way assails the validity of the deed by which the farm called "Somerset" is held in trust for Leonidas Scott and wife. Certainly nothing as to the interest of Mrs. Scott; nor is there any circumstance disclosed by the record which, justly construed, tends to impair the validity of the conveyance touching the interest thereby secured to her. Surely, it cannot be seriously contended that the general denial in the answer of the truth of the allegations of the bill is sufficient to overturn the deed which is the highest legal evidence of her title. On the contrary, until impeached and overthrown in the regular way, the deed alone is all-sufficient for her protection, and, as to one-half of the land conveyed, renders her position in this suit impregnable.

It is noteworthy that the sole object of this suit was to protect the property of Mrs. Scott, and not to screen the property of her husband, Leonidas Scott, from his creditors. It is conceded that he paid part of the purchase money, and that to that extent the property is liable to Rowland's debt. It is true that in the bill Mrs. Scott claims that she paid much more than half of the purchase money, whilst by the face of the deed, unaided by proof of such claim, she can only take one-half, the effect of the deed being to make her and her husband joint and equal owners of the property. But, though she may not be armed with competent proof of her entire claim, and even though she could be charged with a design to take more than she is entitled to under the deed, yet it is not within the province of a court of equity, whose function it is to administer simple justice between the parties, to take from her what is, so far as shown by the record, undeniably hers.

In this state of the case, treating said answer as a cross-bill, the court below, by its decree of April 1, 1879, without in terms declaring the said deed fraudulent and void as to Rowland's debt, simply declared the land so conveyed liable to be subjected thereto, directed the same to be sold subject to the contingent right of dower of Mrs. Scott, and appointed commissioners to execute the decree.

There can be no question as to the erroneous character of this decree, as said answer, treated as a cross-bill, contains no averment upon which the respondent could found any claim to have said deed, as to Mrs. Scott, set aside and annulled. Under such circumstances, the circuit court, instead of entering that decree, should have dismissed the cross-bill, perpetuated the injunction as to Mrs. Scott, and proceeded to subject the undivided half interest of Leonidas Scott in said farm called "Somerset" to the debt of the respondent, Rowland. The doctrine is that a cross-bill should never be brought when the party can obtain in the original suit the same relief without it; and where the cross-bill seeks no discovery, and sets up no defence which might not have been as well taken by answer, the bill will be dismissed with costs. 1 Bart. Chy., 302. And Judge Story states it to be well settled in practice "that any affirmative relief must be sought either by a cross-bill or an independent suit, and can never be granted upon the facts stated in the answer." Story's Eq., Pld. sec. 398, *a.* But this strict rule has been departed from, or does not obtain in Virginia. For here, though, according to the strict rules of pleading, affirmative relief cannot be granted except upon a bill or cross-bill filed for that purpose, yet, where the answer contains the proper averments, the rule will be relaxed when necessary to effect prompt and complete justice between the parties to the suit. *Mettert* v. *Hagan,* 18 Gratt. 234; *Tate* v. *Vance,* 27 Gratt. 571. And where a cross-bill seeks relief which is of an

equitable nature, it is open to demurrer if it does not contain all the proper allegations which confer an equitable title to such relief. 1 Bart. Chy. 302; Story's Eq. Pl., sec. 360. This being so, it follows that an answer, taken and treated as a cross-bill, must be measured by the same standard of requirement; and if the answer be defective in this respect, though the objection be not taken by demurrer, the court will, at the hearing, dismiss it if it does not state a case proper for relief.

At a later day of the same term at which said decree of sale was pronounced, to wit: on the 3d of April, 1879, on the motion of the plaintiffs, leave was granted them to file their answer to said cross-bill. Scott and wife filed their demurrer and answer; and the depositions of a number of witnesses were thereafter taken. All this must be treated as out of the case, as the rights of the parties had previously been settled by the decree of April 1, 1879.

It is also assigned for error that the circuit court, by its said decree of 19th November, 1879 (the decree appealed from), refused to sustain the motion of the plaintiffs, Scott and wife, in the nature of a petition for a rehearing, or bill of review, to set aside the decree of April 1st, 1879, adjudicating the rights of the parties, and ordering a sale of the land.

The court is of opinion that this assignment is well taken. The record, it is true, contains no paper answering to the description of either a petition to rehear or a bill of review, but the decree appealed from recites that the cause came on to be heard (among other things), upon "the motion of Scott and wife in the nature of a petition for a rehearing, or bill of review, to set aside the decree entered on the —— day of April, 1879, adjudicating the rights of the parties, and ordering a sale of the land," &c. It would be, to say the least, wanting in judicial courtesy to impute to the circuit court the irregular and absurd thing of entertaining a mere oral motion to review and

set aside its former decree, solemnly pronounced and duly recorded. Under no circumstances would that court have sanctioned such a practice. Hence we are bound to presume that it was a petition in writing, presented in due form, and containing the requisite averments, but asked to be treated as a petition to rehear, or as a bill of review, as the decree sought to be reviewed might be considered by the court, interlocutory or final. It has already been shown that the decree thus sought to be set aside and annulled was, under the circumstances and law of the case, erroneous. It is, therefore, only necessary to say that the circuit court, in its said decree of November 19th, 1879, erred in refusing to set aside its said former decree, and in confirming the sale of the land made thereunder.

It only remains to determine what disposition must be made of the case by this court. The record shows that the land involved in this already too much protracted and expensive litigation has been so neglected and ill-used as to be greatly depreciated in value. To longer continue the controversy would be but in effect to devote the whole subject to the payment of costs and expenses of litigation, to the detriment of the best interests of all parties concerned. Therefore such disposition as will do substantial justice must be earnestly desired by all parties, if attainable in the condition in which we find the case. We think this can be accomplished, and the controversy practically ended here and now, by protecting the right of Mrs. Scott to one undivided half of said tract of land, and by holding the other half, as the property of Leonidas Scott, subject to said Rowland's debt, and thus do substantial, if not exact, justice between the parties. Mrs. Scott claims that of the purchase price (some $4,300), at which her husband bought the land, she paid much the larger portion (some $3,000), out of her separate estate. She, however, fails to establish, by the

500 SCOTT AND WIFE v. ROWLAND AND ALS.

testimony of competent witnesses, her claim in excess of what the deed secures to her. The effect of the deed is to make her and her husband joint and equal owners of the land. The appellee, Rowland, is shown to have been advised of his rights, for in resisting Mrs. Scott's claim, he filed his answer denying her claim, but in no way attacked the validity of the deed under which she is the owner of one undivided half of the land; and he asked that his said answer be treated as a cross-bill; and it was so treated. We must presume, under the circumstances, that in his answer he said all, by way of averment, that he could say. On the other hand, we must presume that Mrs. Scott offered all the evidence she could offer in support of her claim. And we see that the result is to restrict her to what she takes by the face of the deed. It would, therefore, be idle to send the case back for more evidence.

Under all the circumstances, and for the reasons stated, we are of opinion to reverse and annul the said decree of November 19th, 1879, and to enter such decree here as the said circuit court ought to have entered, and remand the cause for further proceedings to be had in order to a final decree in accordance with the views expressed in this opinion.

DECREE REVERSED.